```
               UNITED STATES DISTRICT COURT
             SOUTHERN DISTRICT OF MISSISSIPPI
                      JACKSON DIVISION
```

M.L. BERRY, ET AL.                                      PLAINTIFFS

VS.                            CIVIL ACTION NO. 3:04CV134TSL-JCS

KUHLMAN CORPORATION, ET AL.                              DEFENDANT

MEMORANDUM OPINION AND ORDER

The magistrate judge entered a case management order in this case on June 15, 2005, which provided, among other things, that each plaintiff produce to defendants the following information:

- i.  The Plaintiff's full name, including any alias, current address, and social security number.
    . . .
- ii. each chemical or any other alleged harmful substance, including PCBs, to which the Plaintiff alleges exposure and for which the Plaintiff seeks damages and the dates, circumstances and manner of alleged exposure to such chemicals;

- iii. all current and prior addresses, other than the Kuhlman Electric Plant, at which an alleged exposure to PCBs or other chemicals is alleged and the years the plaintiff resided at each address;

- iv. complete employment history, including employment at Kuhlman;

- v. the nature of any property damage claims;

- vi. the medical conditions of each Plaintiff and the medical conditions that the Plaintiff attributes to the alleged exposure to PCBs or other chemicals or substances together with a sworn affidavit from an expert expected to testify in this action stating that such medical condition was likely caused by exposure to PCBs or other chemicals or substances;

  vii. the name and address of each physician, hospital or other medical provider with whom the Plaintiff has sought medical care or treatment within the last five (5) years preceding the filing of the Complaint or after the Complaint was filed;

  viii. the results of, and all data, and other documents relating to, tests for the presence of PCBs or other chemicals in the blood or bodily tissues of each Plaintiff; and

  ix. the results of, and all data, and other documents relating to, all tests, if any, conducted by or on behalf of the Plaintiffs for the presence of PCBs or other chemicals on the property of each Plaintiff, the Kuhlman facility and/or any other property from which each Plaintiff claims exposure.

The deadline, and extended deadlines for these disclosures came and went without any of the required information having been disclosed.  This may well have been because the parties were engaged in settlement discussions, and indeed, offers of settlement were extended to all of the 160 plaintiffs by one or more defendants and the offers were accepted by 154 of the plaintiffs.  Following those settlements, several attorneys who were indicated as counsel of record for all but one of the remaining plaintiffs moved to withdraw as counsel, citing a conflict of interest.  An order was entered on June 26, 2006 allowing Roger K. Doolittle, T. Roe Frazer, Frazer Davidson, P.A., Patrick McMurtray, Nate Armistead, McMurtray & Armistad, P.A., and Paul Koerber, to withdraw as attorneys of record for M. L. Berry, Betty Berry, Luke Funchess, Herman May, Charles Funchess, J. W.

2

Channel, George Deaton, James Minter, and Eddie Blackwell.[1] Subsequently, on October 10, 2006, defendants Borg-Warner and Kuhlman moved for summary judgment, or to dismiss the claims of Betty Berry, Luke Funchess, Herman May and James Minter on the basis that they had failed to come forward with the information and materials which the case management order required to be disclosed and thus had failed to produce evidence of PCB exposure and causation sufficient to sustain their claims.

These plaintiffs objected to dismissal, complaining that they had essentially been abandoned by their attorneys and that they were not even aware of the requirements of the case management order.  Given the circumstances, the court declined to grant summary judgment at that time and instead granted these plaintiffs an extension of time to comply with the case management order. Plaintiffs were given a deadline of January 8, 2007 to produce their evidence, and advised that their failure to comply with the court's order would result in dismissal of their claims with prejudice.

---

[1] Although they disputed this, the court has since ruled that plaintiffs J.W. Channell, Eddie Blackwell and Charles Funchess had agreed to settlement of their claims, notwithstanding their later refusal to sign the settlement documents.  The court also dismissed the claims of M.L. Berry, finding that his claims had been settled by his bankruptcy trustee.

Around this same time, plaintiffs had petitioned the court to subpoena records from their former attorney Roger Doolittle, including

> 1.  Any and all records/documents to include but not limited to, the experts report, Depositions, and report of the investigator.
> 2.  Any and all records/documents that are in the possession of other attorneys who are Presently affiliated with Roger K. Doolittle form and those who are not affiliated with Roger K. Doolittle's firm but was party to the above named case at the time of filing.

The court granted them limited relief, issuing subpoenas to plaintiffs which they could in turn serve on Mr. Doolittle.

Plaintiffs served their subpoenas on Roger Doolittle, requesting him to produce:

> 1. Copies of all Experts Reports, consulted with or retained for trial, including expert's qualification and particular expertise.
> 2. Copies of all summaries by Attorneys that was drafted after consulting with the experts.
> 3. Copies of all depositions of the Defendants.
> 4. Copies of all Documents that was submitted in response to the Plaintiffs Discovery.
> 5. Copies of all investigative report, consulted with on behalf of the Plaintiffs.
> 6. Copies of all demand letters or offers for settlement between the Plaintiffs and Defendants.
> 7. Copies of all information provided or obtained from M.D.E.Q.

Doolittle filed a motion for protective order, asserting, first, that he was not in possession of any of the requested documents, which were housed at the law offices of McMurtray & Armistad in Jackson; that the large volume of documents requested (consisting of some 40 to 50 bankers boxes) made it unduly burdensome for him

4

to produce them at the "Regency Hotel," where plaintiffs had directed they be produced; and that many of the requested documents were subject to an agreed protective order entered between the parties.  An order was entered by the court on December 21, 2006 granting Doolittle's motion for protective order since he was not in possession of the documents, but directing that he communicate with McMurtray and Armistad to determine their willingness to grant plaintiffs access to the documents.

By letter dated January 3, 2007, Doolittle advised that plaintiffs would be able to pick up documents responsive to the subpoena by contacting the offices of McMurtray and Armistad on or after January 8, 2007.  Subsequently, on January 18, 2007, the court extended the time for plaintiffs to produce the materials required by the case management order, giving them until February 20 to respond.  Apparently, on February 1, plaintiffs went to the offices of McMurtray and Armistad to view or obtain subpoenaed documents, but, claiming the documents they were provided were not responsive to their request, plaintiffs filed a "Motion for Expediated Consideration," seeking judicial intervention.  An order was entered denying the motion because it was impossible to ascertain "what was requested, what was produced, and whether the production was adequate."  Plaintiffs then filed a motion to reconsider, which was denied, but in order to have some clarification of the problem, the court required that attorney

Armistad submit a statement to the court giving a general description of the boxes of documents produced to the plaintiffs so that the court could determine whether any further extensions were warranted for the plaintiffs to make the required disclosures.

On March 9, 2007, Nathaniel Armistad filed an affidavit in which he explained that after the attorneys were allowed to withdraw as counsel for plaintiffs, each plaintiff was given copies of his/her individual file; that beginning January 8, plaintiffs were given access to 34 boxes of documents that were believed to contain documents responsive to plaintiffs' subpoena; that plaintiffs did not show up to view the documents until February 1; that plaintiffs spent less than 4 hours reviewing the documents and never asked to see them again; and that the only documents not produced were medical records relating to other plaintiffs and general pleadings and correspondence, documents which were not responsive to the subpoena in any event.  Armistad states that plaintiffs also subpoenaed expert reports, but that "no such written reports were issued in this case with the exception of preliminary PCB level data which was made available to the pro se plaintiffs with regard to their individual claims."

On March 15, 2007, after receiving Armistad's affidavit, the court entered an order giving plaintiffs until March 21 to file their disclosures.  On March 21, plaintiffs filed a "Notice of

6

Service of Disclosure," representing they had disclosed to counsel for defendants the information required by the case management order.  Three of the plaintiffs, Herman May, Betty Berry and Luke Funchess, contemporaneously filed affidavits, describing the difficulties they had experienced in securing documents from their former attorneys, and claiming that the production made available to them on February 1, 2007 "did not include personnel files and medical records which Armistad maintains had previously been produced," and that they "still have not received any such documents, other than the medical reports regarding the tests run to determine PCB levels."

   Because the court's intention had been that plaintiffs file their disclosures in the record, the court directed that counsel for defendant Borg Warner electronically file in the record copies of all documents produced by plaintiffs.  The court has now reviewed the documents and based on that review, and on the record of proceedings, it is apparent to the court not only that plaintiffs have not complied with the case management order but that plaintiffs do not have evidence to support their claims in this case.  It is apparent, in fact, not only that plaintiffs do not have evidence to sustain their claims, but that such evidence simply does not exist.  To the point, even assuming that plaintiffs had provided sufficient information regarding their employment history and exposure to PCBs, they have not provided

7

any evidence that they suffer from any medical condition that was caused by exposure to PCBs.

The case management order required that plaintiffs disclose "the medical conditions of each Plaintiff and the medical conditions that the Plaintiff attributes to the alleged exposure to PCBs or other chemicals . . . ." Only one of the plaintiffs has even bothered to identify any medical condition he claims were causwed by PCB exposure. Yet aside from their employment information, none of them has provided any other information responsive to the requirements of the case management order.

Plaintiffs claim that they have never been provided any medical records by their former attorneys; but their attorney represents that all information personal to them was provided at the time counsel's representation was terminated, which can only mean that there are no such medical records. Moreover, even assuming the attorneys possess medical records which they have failed to produce, the case management order requires that plaintiffs disclose to defendants "the name and address of each physician, hospital or other medical provider with whom the Plaintiff has sought medical care or treatment within the last five (5) years preceding the filing of the Complaint or after the Complaint was filed." Even without medical records that may be in the possession of the attorneys (though again, it is highly doubtful that the attorneys possess such records), plaintiffs

should have been able to provide the information without medical records themselves.  Presumably they are aware of the medical providers from whom they have sought medical care or treatment before or since the litigation commenced and yet none of this information was provided.

More pertinently, even if such medical records did exist and plaintiffs were simply unable to produce them because the documents had not been returned by their former counsel, there is a much more glaring and fatal omission from plaintiffs' disclosures.  Specifically, plaintiffs have not produced "a sworn affidavit from an expert expected to testify in this action stating that [any medical condition suffered by plaintiffs] was likely caused by exposure to PCBs or other chemicals or substances."  Indeed, there is no doubt from the record that there is not and has never been any expert testimony, report or affidavit stating that any plaintiff suffers from any medical condition that was likely caused by exposure to PCBs.  Not only were plaintiffs required to produce such an affidavit by the terms of the case management order, but in the absence of such proof, they cannot prove their claim in this case.  Cf. Sonford Prod. Corp. v. Freels, 495 So. 2d 468, 471 (Miss. 1986), overruled on other grounds, Bickham v. Dept. of Mental Health, 592 So. 2d 96, 98 (Miss. 1991) (stating, in workers' compensation case, that "[i]n all cases in which the causal connection would not be

9

obvious to the untrained layman, the claimant must prove the causal connection between the alleged injury and the alleged disability by competent medical proof"); Cole v. Superior Coach Corp., 234 Miss. 287, 106 So. 2d 71, 72 (1958) (stating that "in all but the simple and routine cases ..., it is necessary to establish medical causation by expert testimony").  As this is not a case in which causation would be obvious to the untrained layman, plaintiffs do require expert proof to prove their claim; and this they lack.

Because the plaintiffs at issue have not produced the information required of them by the case management order and the various other orders entered by this court and, as it is clear from the record that they lack evidence essential to proving their claims in this case, it is ordered that their complaint is dismissed with prejudice.

SO ORDERED this 27th day of March, 2007.

/s/ Tom S. Lee
UNITED STATES DISTRICT JUDGE